# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 5:06-1264 |
| | § | (Civil Action No. L-07-0138) |
| HOMERO GARCIA | § | |

## MEMORANDUM AND ORDER

Defendant Homero Garcia ("Garcia"), proceeding *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence, one under 28 U.S.C. § 2255 [Doc. # 29] ("§ 2255 Motion").  Garcia has also filed a second motion, which the Court construes as a challenge to his sentence under 28 U.S.C. § 2241 [Doc. # 30] ("§ 2241 Motion"). In addition, Garcia has filed a Motion for Immediate Deportation [Doc. # 31] under 8 U.S.C. § 1231(a)(4).  The Government has filed a Response and Motion to Dismiss, arguing that Garcia is not entitled to relief [Doc. # 41] under any of these motions. Garcia has replied [Doc. # 42].  The Court has reviewed the pertinent facts and applicable law.  Based upon this review, the Court's clear recollection of the relevant proceedings, and the application of governing legal authorities, the Court concludes that Garcia is not entitled to relief under any theory and that the corresponding civil action, No. L-07-3258, should be **dismissed**.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Garcia was arrested on August 19, 2006 at a United States Border Patrol checkpoint 29 miles north of Laredo, Texas, while carrying 11.4 kilograms of cocaine hidden in a secret compartment in the undercarriage of his vehicle.  On September 12, 2006, a federal grand jury returned a two-count indictment charging Garcia with conspiracy to possess with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A) (Count One) and possession with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(A) and 18 U.S.C. § 2  (Count Two).

On October 11, 2006, Garcia entered into a written plea agreement with the Government, whereby he agreed to plead guilty to Count Two in exchange for sentencing recommendations and dismissal of the remaining count.

Following Garcia's guilty plea and conviction on Count Two of the indictment, the Court instructed the Probation Office to prepare a pre-sentence report ("PSR") for purposes of determining punishment under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").  The Probation Office determined that Garcia possessed 10.03 kilograms of cocaine (without the packing material), which resulted in a base offense level of 32.  Garcia had no prior criminal history and was thus assigned a criminal history category of I.  Thus, Garcia faced a potential prison sentence of

between 121 and 151 months.  Garcia filed no objections to the PSR.

During sentencing, the Court determined that Garcia qualified for an adjustment to his base offense level under the Safety Valve provision of U.S.S.G. § 5C1.2.  He also qualified for an adjustment because he accepted responsibility for his crime in accordance with  U.S.S.G.  § 3E1.1.  Thus, the total offense level was reduced to 27.  As a result, Garcia's potential range of imprisonment was reduced to 70 to 87 months imprisonment, followed by a three- to five-year term of supervised release, and a fine ranging from $12,500 to $4,000,000.  A special assessment of $100 was statutorily mandated. The Court, citing the serious nature of his crime, but acknowledging the many letters of support submitted on Garcia's behalf, sentenced him at the bottom of the Guideline range in nearly every respect.  Garcia was sentenced to 70 months imprisonment, five years of supervised release, ordered to pay the $100 special assessment, and no fine.  Garcia did not appeal.

Garcia now seeks relief under 28 U.S.C. § 2255 and various other federal laws, seeking a reduction in his sentence or, in the alternative, immediate deportation to Mexico.  Garcia's motions have been fully briefed and are ripe for review.

## II.   <u>STANDARD OF REVIEW</u>

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal.

*United States v. Frady*, 456 U.S. 152, 166 (1982).  "Following a conviction and exhaustion or waiver of the right to direct appeal, [courts] presume a defendant stands fairly and finally convicted."  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).  "As a result, review of convictions under [§] 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice."  *Frady*, 456 U.S. at 166.  Importantly, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel, "since no opportunity existed [before the district court] to develop the record on the merits of the allegations." *United States v. Higdon*, 832 F.2d 312, 313–14 (5th Cir. 1987); *see also Massaro v. United States*, 538 U.S. 500 (2003); *see also United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992) ("[I]neffective assistance of counsel claims are obviously of constitutional magnitude and satisfy the cause and actual prejudice standard.").

The defendant proceeds *pro se* in this matter.  *Pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them.  *Haines v. Kerner*, 404 U.S. 519, 521 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).  At the same time, however, *pro se* litigants are still required to

provide sufficient facts in support of their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).  Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."  *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

## III.   DISCUSSION

Garcia alleges two claims.  First, Garcia asserts that he was impermissibly denied effective assistance of counsel because his attorney failed to seek or obtain for him a one-level reduction in his Guideline offense level in exchange for Garcia's agreement not to appeal his conviction.[1]  He further alleges that he has been subjected to unlawful discrimination and denial of equal protection because, as an undocumented immigrant, he cannot participate in certain Bureau of Prisons early release programs.[2]  For the reasons discussed below, the Court concludes that Garcia

---

[1]   *See* Defendant's § 2255 Motion [Doc. # 29], at 5.  (Garcia has inserted pages into the separately paginated § 2255 form motion.  Thus, for ease of reference, all page references to this document are to the page numbers assigned by the Court's electronic docketing system.)

[2]   Garcia also suggests that, because of the ineffectiveness of his counsel, he was denied his right to appeal.  § 2255 Motion, at 6.  However, he does not allege this as an
(continued...)

has not demonstrated entitlement to relief on either ground.

## A.    **Garcia's Guilty Plea**

Garcia's § 2255 Motion fundamentally challenges terms (or the absence of terms) in his written agreement with the Government to enter a plea of guilty to certain criminal charges.  As a threshold matter, it is noted that Garcia – correctly on the facts alleged – does not challenge the advice of his counsel in regard to his decision to plead guilty.  Any such challenge would be futile.  "A guilty plea 'is more than a confession which admits that the accused did various acts.'"  *United States v. Broce*, 488 U.S. 563, 570 (1989) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)).  "It is an 'admission that he committed the crime charged against him.' "  *Id*. (quoting *North Carolina v. Alford*, 400 U.S. 25, 32 (1970)).  "By entering a plea of

---

[2]      (...continued)
independent claim, and he offers no evidence or argument directed toward it.  In order to prevail on a claim of ineffective assistance for failure to file a notice of appeal, a defendant must show that he was not even consulted by his counsel about the possibility of an appeal, or that his counsel failed to pursue an appeal when asked.  *See Roe v. Flores-Ortega*, 528 U.S. 470, 477–78 (2000).  If counsel consults with the defendant, then counsel acts in a "professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."  *Id.* at 478.  In this case, the record establishes that Garcia's attorney did consult him about an appeal and that Garcia decided not to pursue one. *See, e.g.*, Statement of Non-Appeal [Doc. # 28] (The document, signed by Garcia, states in English and Spanish:  "I know that I have the right to appeal to the Court of Appeals.  I have discussed my case with my attorney and I have decided not to pursue an appeal.");  *see also* Government's Response to Defendant's § 2255 Motion [Doc. # 41], Exh. A: "Declaration of Guillermo R. Garcia" (Garcia's counsel at sentencing). Accordingly, to the extent he is seeking to assert this as a ground of error, it is overruled.

guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." *Id.*

"It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984) (footnotes omitted). "It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence—because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange." *Id.* Thus, a defendant has only a limited ability to challenge a conviction entered pursuant to a valid guilty plea. *See Tollett v. Henderson*, 411 U.S. 258, 266 (1973). "The focus of federal habeas inquiry is the nature of [counsel's] advice and the voluntariness of the plea . . . ." *Id.* "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, . . . [h]e may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel" was constitutionally deficient. *Id.* (citing *McMann v. Richardson*, 397 U.S. 759, 770 (1970)). Thus, a voluntary guilty plea waives all non-jurisdictional errors in the proceedings against the defendant, including those claims of ineffective assistance of counsel except insofar as the  ineffectiveness is alleged to have rendered the guilty

plea involuntary. *See United States v. Glinsey*, 200 F.3d 386, 392 (5th Cir. 2000); *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (To prove prejudice for an ineffective assistance of counsel claim in the context of a guilty plea, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

The Court has carefully considered Garcia's § 2255 Motion, as well as his other two motions.  None of the claims raised by Garcia call into question the validity or the voluntariness of his decision to plead guilty.  At no time does Garcia suggest that, in the absence of his counsel's alleged wrongdoing, he would have proceeded to trial.  Instead, his claims concern the 70-month prison sentence he received in this case.  The Court therefore turns to the issues Garcia raises in his motions.

## B.    Ineffective Assistance of Counsel — Plea Negotiations and Sentencing

Garcia complains that his retained attorney, Guillermo Garcia, Esq., was ineffective for failing to pursue a one-level reduction in his recommended Guideline offense level in exchange for Garcia's express agreement not to appeal his case.  The Government responds that Garcia's guilty plea, which was a written agreement, did not include any promises contingent upon his decision to seek an appeal.  This fact is apparent from a review of the plea agreement itself, and Garcia's colloquies with the

Court during both his rearraignment and sentencing.   More significantly, the Government asserts that Garcia was offered the "standard" plea agreement that was available at the time.   Under the terms of these standard agreements, prosecutors were not offering sentencing concessions in exchange for waivers of the right to appeal. Thus, the Government argues, Garcia's attorney's conduct was not deficient for failing to pursue such an agreement.

Claims for ineffective assistance of counsel are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency.  *See Williams v. Taylor*, 529 U.S. 390, 390–91 (2000); *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable."  *Strickland*, 466 U.S. at 687.

Counsel's performance must fall below an objective standard of reasonableness to be constitutionally deficient.  *United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005) (citing *Strickland*, 466 U.S. at 687–688). "Judicial scrutiny of counsel's performance must be 'highly deferential,' and the court must make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *United States v. Harris*, 408 F.3d 186, 189 (5th Cir. 2005) (quoting *Strickland*, 466 U.S. at 689).  "There is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .'" *Id.*

Even if defense counsel committed substantial error, a petitioner must still demonstrate actual prejudice as a result of his counsel's deficient performance. Performance is prejudicial only if "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Harris*, 408 F.3d at 189.  A "reasonable probability" is a probability sufficient to undermine confidence in the reliability of the verdict. *See Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005) (citing *Little v. Johnson*, 162 F.3d 855, 860–61 (5th Cir. 1998)).[3]

In response to Garcia's contentions that his attorney failed to seek and obtain the Government's agreement to an extra level reduction in his Guidelines offense level in exchange for his concession not to appeal, Garcia's attorney has provided a sworn

---

[3]     Although cast as an ineffective assistance of counsel claim, Garcia's complaint centers on an alleged miscalculation of his Guideline sentence.  However, "[a] district court's calculation under or application of the sentencing guidelines . . . is not the type of error cognizable under [§] 2255." *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995); *see also Payne*, 99 F.3d at 1281–82; *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).  Nonetheless, even if this Court could offer Garcia relief on this claim, a review of the record, discussed herein, indicates that his claim lacks merit.

statement.  He states that, in the Fall of 2006, he pursued the "standard" plea agreement offered by the United States Attorney for the Laredo Division for drug crimes such as those committed by Garcia.  According to Garcia's attorney, at the time of Garcia's plea, October 2006, the standard agreement did not include concessions by the Government for a defendant's promise not to seek an appeal.  In December 2006, months after Garcia had entered his plea, the policies of the U.S. Attorney's Office for the Laredo Division changed and began to include as part of the standard plea offer a recommendation that a defendant receive an additional level off the Guideline offense level in exchange for a waiver of direct appeal and collateral attack.  Garcia's attorney indicates that he sought this concession on Garcia's behalf, post-rearraignment, but was unsuccessful.  He states that the prosecutor refused to apply the new policy retroactively to Garcia.  This was consistent with counsel's experience for other clients.  Given these events, there is no evidence that Garcia's attorney's performance was constitutionally deficient.

In addition, it is noted that Garcia entered into a written plea agreement with the Government that makes no mention of any promises in exchange for his decision not to seek an appeal.  Garcia nevertheless asserts that his attorney informed him at or before the sentencing hearing that the Court would offer Garcia a lower sentence if he agreed not to appeal and that counsel failed to negotiate the provision into the plea

agreement and failed to ask the Court for the reduction during the sentencing.[4]

Garcia's conclusory, belated assertion flies in the face of the rest of the substantial

record and is insufficient to warrant relief.  The written plea agreement, which Garcia

signed under oath, states that it "constitutes the complete plea agreement between the

United States, the defendant, and defendant's counsel."[5]  Further, the signed plea

agreement clearly states that the maximum term of imprisonment for his crime was

"life" and that, notwithstanding the Sentencing Guidelines, the sentencing court had

full discretion to impose a sentence up to that statutory maximum.  His agreement

further reflects Garcia's acknowledgment that any "estimate of the probable

sentencing range under the [S]entencing [G]uidelines that [he] may have received

from [his] counsel, the United States, or the Probation Office is a prediction, not a

promise, and is not binding on the United States, the Probation Office[,] or the

Court."[6]

       During the rearraignment, the Court carefully reviewed Garcia's plea agreement

with him, which made no mention of any promises contingent upon his commitment

not to seek an appeal.  Garcia was asked: "Have you been promised anything else to

---

[4]      § 2255 Motion [Doc. # 29], at 4, 6 and 7.

[5]      *See* Plea Agreement [Doc. # 15], at ¶ 16.

[6]      *Id.* ¶ 9.

get you to plead guilty today?"  He replied, "No."[7]  *See Blackledge v. Allison*, 431

U.S. 63, 73–74 (1977) (A criminal defendant's "[s]olemn declarations in open court

carry a strong presumption of verity," which constitute a "formidable barrier in any

subsequent collateral proceeding."); *Montoya v. Johnson*, 226 F.3d 399, 406 (5th Cir.

200).[8]  It is clear that at the time of his guilty plea, Garcia had no commitment – and

knew he had none – for a reduced Guideline offense level based on his promise not

to appeal.  While under oath, he said nothing to contradict the correctness and

completeness of the written agreement.  Indeed, he reaffirmed the absence of any

other promises.

        At sentencing, the Court carefully recalculated Garcia's Guideline sentence in

light of his entitlement to the Safety Valve provision, and then asked twice whether

the defense was in agreement with the calculations and newly announced level.[9]  Both

times, Garcia's counsel stated that the calculation—which included no reduction for

any alleged agreement not to appeal—was correct.  During sentencing, Garcia was

invited to say whatever he wanted the sentencing judge to know, and Garcia spoke

---

[7]        *See* Transcript: Rearraignment [Doc. # 40], at 33–34

[8]        Garcia was further reminded that he faced a statutory maximum sentence of life
        imprisonment and that the sentencing judge would not be bound by the sentence
        recommended in the plea agreement.  *See id.* at 22–24, 34.

[9]        *See* Transcript: Sentencing [Doc. # 39], at 4-5.

directly to the Court.[10]   Garcia allocated in some detail but did not mention any entitlement to – or request for – an additional reduction in the offense level announced by the Court in exchange for his waiver of appeal.[11]   Garcia thus was given opportunity to express his alleged belief that he had entered into an agreement with prosecutors concerning his right to appeal, both during his rearraignment and sentencing.  He did not do so and his belated claim of such a promise is unavailing.

Finally, at the end of the sentencing, the Court also informed Garcia that he had the right to seek an appeal *and* that the Court would appoint an attorney for him "[i]f [he] could not afford an attorney . . . for your appeal, if you choose to appeal."[12]  In fact, the record reflects that it was not until *after* he was sentenced, knowing the Guideline calculations, knowing his sentence, and having heard the sentencing proceedings, that Garcia signed a statement of non-appeal.[13]

Finally, there is no evidence that Garcia's counsel was ineffective in failing to request from the Court at sentencing the additional one-level reduction for his client

---

[10]     *Id.* at 9.

[11]     *Id.* at 9-10.

[12]     *See id.* at 12–13.

[13]     *See* Statement of Non-Appeal [Doc. # 28].  The document states: "I am a defendant in this case, and I have now been sentenced.  I know that I have the right to appeal to the Court of Appeals.  I have discussed my case with my attorney and I have decided not to pursue an appeal."

in exchange for Garcia's agreement not to seek an appeal.  The undersigned, the sentencing judge, considered various aggravating facts in the case, such as that Garcia had made prior trips with drugs and that he transported more than 10 kilograms of cocaine with two children and a woman (who apparently was a girlfriend, despite the fact he was married) in his car to make the travel appear legitimate.[14]   Indeed, the undersigned is the sentencing judge and finds that, even if the Government recommended a further one-level reduction in the Guideline offense level in exchange for Garcia's agreement not to appeal his conviction, it is unlikely that Garcia would have received a shorter term of imprisonment.  Accordingly, even if the Court were to credit Garcia's belated assertion that his attorney failed to keep an undisclosed promise to seek at sentencing an additional Guideline one-level reduction, and thus could be said to have been deficient, which the Court does not, Garcia still has not demonstrated prejudice under the *Strickland* standard, and cannot do so.  Garcia is not entitled to § 2255 relief and this ground for relief is denied.

## C.     Ineligibility to Participate in Bureau of Prison Programs

Garcia also asserts that he is being discriminated against or denied equal protection because of his alienage status.  He contends that he is entitled to early

---

[14]     *See* Transcript: Sentencing [Doc. # 39], at 9, 10-11. The Court noted that Garcia did not get an applicable enhancement of use of a minor, which would have raised the Guideline level.  *Id.*

release from his sentence of imprisonment because, as an undocumented immigrant, he does not qualify for certain Bureau of Prison ("BOP") programs in which United States citizens often are able to participate, which programs result in the prisoner's service of part of imprisonment in a "halfway house" or reduction of the sentence required to be served.[15]  Garcia brings this claim as a separate motion under 28 U.S.C. § 2255, 28 U.S.C. § 2241, 18 U.S.C. § 3553, and 18 U.S.C. § 3582(c)(2).  However, "because he is challenging the manner in which his sentence is being executed rather than the validity of his conviction and sentence," the motion is "properly construed as a petition for *habeas corpus* pursuant to 28 U.S.C. § 2241."[16]  *United States v. Tubwell*, 37 F.3d 175, 177 (5th Cir. 1994).

A § 2241 motion brought by a inmate in federal custody must be brought in the federal jurisdiction encompassing the inmate's place of confinement.  *Pack v. Yusuff*, 219 F.3d 448, 451 (5th Cir. 2000) (citing *Blau v. United States*, 566 F.2d 526, 527

---

[15]    Garcia also seeks relief under the "Federal Parole Bill," which he states "has been reintroduced in the 110th U.S. Congress."  Bills are merely proposed laws which do not create any rights or duties unless and until they are passed by Congress and signed by the President.  The Court has no authority to offer relief under a bill that has not been enacted.

[16]    Notwithstanding whether this motion constitutes an impermissible "second or successive" § 2255 motion, which it well may, the request is denied.  These issues were considered by the Court in imposing sentence and factored into the Court's decision to sentence Garcia to 70 months, the bottom of the Guideline range.  *See* Transcript: Sentencing [Doc. # 39], at 6–8, 11.  There is no indication that 18 U.S.C. § 3582©), which governs the retroactive application of amendments to the Sentencing Guidelines, applies to Garcia's claim.

(5th Cir. 1978)); *Murray v. Reese*, 236 F. App'x 21, 22 (5th Cir. 2007) (per curiam).

Garcia is being held at the Eden Detention Center in Eden, Texas, which is within the

jurisdiction of the Northern District of Texas.[17]   Accordingly, pursuant to § 2241, this

Court lacks jurisdiction over Garcia's claim and it is dismissed.[18]

### D.   **Request for Immediate Deportation**

Finally, Garcia, a citizen of Mexico, requests that he be released from prison

and immediately deported to Mexico.[19]   Under federal law, an imprisoned alien may,

under certain circumstances, be removed to his country of citizenship prior to

completion of the his sentence. 8 U.S.C. § 1231(a)(4)(B)(I).   However, the decision

to seek early deportation lies solely with the Attorney General of the United States.

*Id.*   Moreover, there is no private right of action to enforce or seek relief under this

---

[17]   The "savings clause" of § 2255 creates an opportunity for this Court, which is in the Southern District of Texas, to rule on Garcia's § 2241 petition "if he can show that a § 2255 motion otherwise provides him with an 'inadequate' or 'ineffective' remedy." *Benson v. Justice*, 511 F.3d 486, 487 (5th Cir. 2007).   However, Garcia has not made this showing.

[18]   The Government has also argued that Garcia has failed to exhaust administrative remedies through the BOP, which is required before a prisoner can seek relief under § 2241.   *See Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) (citing *United States v. Gabor*, 905 F.2d 76, 78 n2. (5th Cir. 1990); *Lundy v. Osborn*, 555 F.2d 534, 534–35 (5th Cir. 1977)).   Garcia has not responded to this argument.   The Court reminds Garcia of his obligation to seek relief through the BOP if he intends to file a § 2241 petition in the proper federal court.

[19]   Garcia seeks relief under 8 U.S.C. § 1252(h)(2)(A).   However, that statute has been recodified at 8 U.S.C. § 1231(a)(4).   The Court will treat his motion as if asserted pursuant to § 1231(a)(4).

statute.  8 U.S.C. § 1231(a)(4)(D) ("No cause or claim may be asserted under this paragraph against any official of the United States . . . to compel the release, removal, or consideration for release or removal of any alien.").  Although the Fifth Circuit has yet to address this precise issue, other United States Courts of Appeals have uniformly agreed that an alien in custody may not bring a motion seeking early deportation.  *See, e.g.*, *Haddad v. United States Attorney General*, 194 F.3d 1312, 1999 U.S. App. LEXIS 32948, at *1 (6th Cir. 1999); *United States v. Marin-Casteneda*, 134 F.3d 551, 556 (3d Cir. 1998); *United States v. Aispuro*, 127 F.3d 1133, 1134 (9th Cir. 1997); *Thye v. United States*, 109 F.3d 127, 128–29 (2d Cir. 1997); *see also United States v. Miranda*, No. C-00-392, 2008 U.S. Dist. LEXIS 53937, at *4 (S.D. Tex. July 15, 2008) (Jack, J.).  Accordingly, Garcia's motion for immediate deportation is denied.

## IV.    REQUEST FOR EVIDENTIARY HEARING

Garcia has requested an evidentiary hearing on his motions. A motion brought under 28 U.S.C. § 2255 may be denied without a hearing if the motion, the files, and the records of the case conclusively show that the petitioner is entitled to no relief. *See United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam) (citing *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980)).  In this case, the record is adequate to dispose fairly of the allegations made by Garcia over which this Court has jurisdiction.  A district court need inquire no further on collateral review.  Therefore,

Garcia's request for an evidentiary hearing is denied.

## V.   **CERTIFICATE OF APPEALABILITY**

Garcia's § 2255 motion is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, codified as amended at 28 U.S.C. § 2253.  According to the act, a certificate of appealability ("COA") is required before a district court decision on a § 2255 motion can be taken to the court of appeals.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.1997) (noting that AEDPA requires a certificate of appealability before an appeal can proceed in actions filed under either 28 U.S.C. § 2254 or § 2255).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

"Under AEDPA, a COA may not issue unless 'the applicant has made a substantial showing of the denial of a constitutional right.'" *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (citing 28 U.S.C. § 2253©) (1994 ed., Supp. III)).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253©)  is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong." *Id* at 484. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Id*.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After carefully considering the entire record of Garcia's criminal proceeding and his claims asserted for collateral relief, the Court concludes that jurists of reason would not debate whether the movant has stated a valid claim or whether any procedural ruling in this case was correct. Accordingly, a certificate of appealability will not issue.

## V.   <u>CONCLUSION</u>

Because Garcia has failed to establish an error of constitutional or jurisdictional magnitude, he is not entitled to relief under 28 U.S.C. § 2255. This Court lacks jurisdiction over his claim under 28 U.S.C. § 2241. Accordingly, it is hereby

**ORDERED** that Defendant Homero Garcia's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. # 29] is **DENIED** and the corresponding civil action (L-07-0138) is **DISMISSED WITH PREJUDICE**. It is

further

**ORDERED** that Garcia's motion for relief from his sentence under 28 U.S.C. § 2241 [Doc. # 30] is **DISMISSED** for lack of jurisdiction.  It is further

**ORDERED** that Garcia's Motion for Immediate Deportation [Doc. # 31] is **DENIED**.  It is further

**ORDERED** that Garcia's request for an evidentiary hearing is **DENIED**.  It is further

**ORDERED** that the Government's Motion to Dismiss [Doc. # 41] is **GRANTED**.  It is further

**ORDERED** that a certificate of appealability is **DENIED**.

SIGNED at Houston, Texas, this 29th day of **August, 2008**.

Nancy F. Atlas
United States District Judge